UNITED STATES of America,
Plaintiff-Appellee,

v.

Stanley Mills STANERT,
Defendant-Appellant.

No. 84–5128.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1984.

Decided June 5, 1985.

Roger W. Haines, Jr., Maria T. Arroryo-Tabin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Craig E. Weinerman, San Diego, Cal., for defendant-appellant.

Before GOODWIN, POOLE, and BOOCHEVER, Circuit Judges.

POOLE, Circuit Judge:

Stanley Mills Stanert appeals his conviction for conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. He contends that the district court improperly denied his pretrial motion to suppress evidence found at his residence and challenges the sufficiency and accuracy of the affidavit used to obtain the search warrant. We agree with appellant that he is entitled to an evidentiary hearing to challenge the validity of the search warrant.

I. *Facts*

On 7 December 1983, a California Municipal Court Judge issued a telephonic search warrant permitting police to search Stanert's residence in Cardiff-by-the-Sea, California. In her oral affidavit in support of the warrant, Agent Hanlon, a San Diego Sheriff's officer assigned to the Narcotics Task Force, stated that she believed there to be a clandestine laboratory in the residence. Her information was largely based on information received by Drug Enforcement Administration (DEA) Agent Blacklock. Blacklock was standing next to Hanlon when she delivered her oral affidavit, and the affidavit related the following facts.

The day before, an anonymous male had phoned Blacklock to inform him that the occupants of 2476 Newcastle Drive were using ether either to free-base cocaine or to manufacture some type of drug. The caller stated that he was a biochemist familiar with the smell of ether and that this smell was very strong in the evening hours throughout the neighborhood. The next day a different anonymous male phoned Blacklock also to complain of a strong ether smell emanating from the residence. The second caller stated that he had walked by the residence and observed the doors on each side of the house open as if ventilating the residence. In addition, the caller informed Blacklock that the occupant of the house drove a white Mercedes Benz automobile with California license plates ORZ 572 and had identified himself to the caller as "Stan." Blacklock checked with the California Department of Motor Vehicles and discovered that the license number was listed to a 1964 Mercedes Benz registered to defendant at the residence in question. He also checked DEA records and discovered that Stanert was suspected of being involved in marijuana and cocaine smuggling and that in 1980, Stanert had been arrested in Panama with approximately 14 pounds of cocaine.

Blacklock then contacted Agent Nielsen of the Internal Revenue Service (IRS). Nielsen informed Blacklock that as part of a continuing investigation being conducted by the IRS, a confidential informant had identified Stanert as an individual who was allegedly manufacturing cocaine. Blacklock knew the informant, and from his own personal participation in several investigations, knew the informant to be reliable. Blacklock advised Hanlon that he had never known the informant to give false or misleading information.

Based on the complaints by the anonymous callers of the strong ether smell, Hanlon and another agent went to the vicinity of Stanert's residence whereupon they also detected the overwhelming odor of ether. When the agents arrived at the residence, the doors to the house were

closed, and the officers observed a vehicle that appeared to be a Mercedes Benz. The previous year, Hanlon had investigated a clandestine laboratory at the residence which had blown up due to the ignition of ether fumes.

Hanlon set forth the foregoing facts in an oral affidavit to a judge of the Municipal Court of San Diego County. The judge of that court thereupon issued a search warrant for Stanert's residence. Agents executed the warrant and seized cocaine, scales, $3,650 in cash and drug paraphernalia. Neither laboratory equipment nor ether was found on the premises. Stanert was arrested, and soon after, a federal grand jury returned a one-count indictment charging him with a violation of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute).

Stanert sought suppression of all items seized during the search of the residence. He challenged both the sufficiency and veracity of Hanlon's affidavit. Stanert requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), claiming that the affidavit contained the following material misrepresentations and omissions: (1) Hanlon misrepresented the information given by the 6 December 1983 anonymous caller because that caller never stated that the occupants of the house were using ether to manufacture some type of drug and only told Blacklock that it was the caller's *opinion* that the occupants were probably free-basing cocaine; (2) Hanlon's representations concerning the smell of ether were fabricated and untrue; (3) Hanlon misrepresented by omission Stanert's Panama arrest by failing to inform the judge that the government's records indicated that Stanert apparently had not been convicted of any offense; (4) Hanlon misrepresented the earlier explosion at Stanert's residence by failing to tell the judge that Stanert had purchased and moved onto the property some time after this explosion; and (5) Hanlon neglected to advise the judge that the agents had unsuccessfully sought a search warrant from another judge. Stanert also contended that the confidential informant was Louis Villar and that Villar could not have told Nielsen that defendant was involved in the manufacturing of synthetic cocaine because such a substance does not exist. Stanert asked the court to conduct an *in camera* hearing on the informant's identity pursuant to *United States v. Kiser*, 716 F.2d 1268 (9th Cir.1983).

The district court found that Stanert had not established "enough of a position in order to suppress the warrant." Thus, Stanert's motion for an evidentiary hearing was denied because Stanert had failed to present evidence sufficient to justify suppression. Stanert was convicted on stipulated facts of a new charge of violating 21 U.S.C. § 846 (conspiracy to possess with intent to distribute a controlled substance) brought in a superceding information. The district court sentenced him to a three-year term. This appeal followed.

II. *Sufficiency of the Affidavit.*

■ A search warrant, to be valid, must be supported by an affidavit establishing probable cause. In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *United States v. Taylor*, 716 F.2d 701 (9th Cir.1983). Stanert argues that the Hanlon affidavit failed to support the necessary determination of probable cause to believe that his residence housed an illicit laboratory. We disagree.

■ Probable cause determinations are to be made by viewing the "totality of the circumstances" set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Because probable cause is a fluid concept not readily, or even usefully, reduced to a neat set of legal rules,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.

*Id.* 462 U.S. at 238, 103 S.Ct. at 2332.

■ We apply a narrow standard of review to a magistrate's decision to issue a search warrant. *United States v. Estrada,* 733 F.2d 683, 684 (9th Cir.1984). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. We may not reverse such a conclusion unless the magistrate's decision is clearly erroneous. *United States v. Estrada,* 733 F.2d at 684; *United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984).

■ The judge in this case issued the search warrant on the basis of the Hanlon oral affidavit. We find that the totality of circumstances as set forth in the affidavit provided the judge with a substantial basis for concluding that probable cause existed to search Stanert's residence.

■ A confidential informant had identified Stanert as an individual who was allegedly manufacturing cocaine. "To credit a confidential source's information in making a probable cause determination, the affidavit should support an inference that the source was trustworthy and that the source's accusation of criminal activity was made on the basis of information obtained in a reliable way." *United States v. Landis,* 726 F.2d 540, 543 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984). Although the tip in this case came from an informant who had demonstrated reliability, the information reported represents a bare conclusion which fails to reveal the informant's basis of knowledge, i.e., whether the informant was relying on something more substantial than casual rumor. In addition, the statement does not purport to reveal the location of the alleged laboratory and certainly does not locate it at 2476 Newcastle Drive.

These deficiencies, however, do not foreclose a finding of probable cause. Under a totality of the circumstances analysis, "a deficiency in one [area] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. In this case, the judge was presented with other information which, when combined with the tip of the confidential informant, enabled him to conclude that there was "a fair probability that contraband or evidence of crime" would be found in Stanert's house. *Id.* at 238, 103 S.Ct. at 2332.

Two citizens had phoned Blacklock to report that Stanert's residence emitted a strong odor of ether, and this odor was corroborated by Hanlon and another agent. One of the callers had advised Blacklock that the occupants of the house were using the ether to free-base cocaine or manufacture drugs. Hanlon informed the judge that she had received instruction that ether is a solvent used in the preparation of several illicit substances, including cocaine. *See United States v. Willis,* 633 F.2d 930 (10th Cir.1980), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 950, 67 L.Ed.2d 117 (1981) (affiant stated that based on his personal experiences of seven and a half years as a drug agent, he knew ether was a necessary precursor in the manufacture of amphetamines); *United States v. Park,* 531 F.2d 754 (5th Cir.1976) (smell of ether supported probable cause to believe that suspect was illegally manufacturing drugs).

Moreover, Hanlon had investigated an illicit lab at the residence that had exploded the year before due to the ignition of ether fumes. This explosion indicates that Stanert had previously been engaged in the illegal manufacture of controlled substances. *See United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971) (prior seizure of a sizable stash of illicit whiskey in an abandoned house under the defendant's control indicated that the defendant had previously trafficked in this contraband). Such prior behavior "made the charge against [Stanert] much less subject to scepticism than would be such a charge against one with-

out such a history." *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). Besides the laboratory explosion at the residence, Stanert's "history" also included a 1980 arrest in Panama for possession of approximately 14 pounds of cocaine. The large amount of cocaine involved in this arrest suggests that Stanert was close to the source of the drug, thereby giving added weight to the present charge that Stanert was in fact manufacturing the drug.

Although no single piece of evidence by itself is conclusive, viewed together the "totality of the circumstances" was sufficient to establish probable cause to believe that evidence of drug-related activity would be found at Stanert's residence.

### III. *Omissions or misrepresentations*

Stanert argues that the warrant affidavit contains material omissions and false statements that negate its facial showing of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■■■ In *Franks*, the Supreme Court held that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "(1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). Where the defendant makes such a showing, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676. If after the limited evidentiary hearing the court concludes that the magistrate or judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, then suppression is an appropriate remedy. *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984).

■■■ In his motion for an evidentiary hearing before the district judge, Stanert raised six alleged misrepresentations or omissions. The court denied the motion. Because we find that Stanert has made a sufficient showing with respect to four inaccuracies or omissions which were material to the finding of probable cause, we reverse and remand for a limited evidentiary hearing.

In her affidavit, Hanlon informed the judge that one of the callers reported to Blacklock that the occupants of 2476 Newcastle Drive were using ether either to free-base cocaine or to manufacture drugs. Stanert contends that this statement is inaccurate in two respects and points to Blacklock's investigative report for support. In that report which appellant submitted to the district court, Blacklock writes that the caller "opined that the resident of 2476 Newcastle was probably free basing cocaine." Thus, according to the report, the caller never suggested that appellant was operating a clandestine laboratory, and furthermore, his statement concerning appellant's alleged cocaine use was but an opinion apparently based on speculation. The misstatement by Hanlon in the affidavit, however, implies that the caller had personally observed drug activity at the residence.

Second, Hanlon failed to inform the judge that while appellant had been arrested in Panama back in 1980, it appeared that he had not been convicted of any offense. The Government, however, contends that Hanlon's failure to inform the judge of the apparent disposition of appellant's Panamanian arrest was not intentional or reckless. It argues that Hanlon did not know whether appellant had been convicted of possessing cocaine, and that since the affidavit spoke only in terms of an arrest, the reasonable reader would conclude that no disposition was known.

■■■ In *Lefkowitz*, 618 F.2d at 1317 n. 3, this court assumed without deciding, that the *Franks* rationale permits an attack on search warrants obtained by affidavits marred by omissions of facts. Today, we

expressly hold that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead. *See United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984).

■ The Supreme Court in *Franks* noted that the Warrant Clause of the Fourth Amendment takes the affiant's good faith as its premise. 438 U.S. at 164, 98 S.Ct. at 2680. Moreover, "[b]ecause it is the magistrate who must determine independently whether there is probable cause, ... it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Id.* at 165, 98 S.Ct. at 2681. The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination. By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning. *See id.* at 168, 98 S.Ct. at 2682.

■ Clear proof of deliberate or reckless omission is not required. *See United States v. Chesher,* 678 F.2d 1353, 1362 (9th Cir.1982). Such proof is reserved for the evidentiary hearing. *Id.* At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.

■ Although Hanlon might not have known precisely what the disposition of Stanert's 1980 arrest was, it appears that she was aware that DEA records suggested that Stanert had not been convicted of any charge. Blacklock's investigative report clearly states that according to DEA records it appeared that Stanert had not been convicted. As Stanert points out, Blacklock was the agent who informed Hanlon of the Panamanian arrest, and he was standing next to Hanlon when she submitted her oral affidavit to the judge via telephone. It is therefore reasonable to conclude that Hanlon was informed of the fact that Stanert had apparently not been convicted of any charge stemming from his 1980 arrest in Panama. Moreover, the mere fact that the affidavit spoke only in terms of an arrest does not mean that failure to inform the judge of the apparent disposition of the charge was not misleading. Inclusion of the information serves to weaken the significance of Stanert's arrest for possession of 14 pounds of cocaine because the apparent absence of a conviction would raise doubts as to whether Stanert had any connection with the cocaine which was seized.

■ Finally, Stanert contends that Hanlon misrepresented the earlier explosion at Stanert's residence by failing to tell the judge that Stanert purchased and moved onto the property *after* the explosion. The Government argues that the omission was not intentional or reckless because Hanlon reported the explosion for the limited purpose of illustrating the danger which ether fumes pose. We find this argument untenable.

The fact that Hanlon reported the site of the explosion to be Stanert's address would clearly leave a judge reviewing the affidavit with the impression that Stanert was residing at the house when the explosion occurred. When this impression is coupled with the fact that the cause of the explosion was the ignition of ether fumes escaping from an illicit laboratory, the logical and reasonable inference is that Stanert was the operator of the lab. Such an inference is quite damaging considering the current suspicion being leveled at the defendant. Thus, we conclude that Stanert has made a sufficient showing that Hanlon's nondisclosure of the previous ownership of the residence caused the information actually reported to be misleading, and that this nondisclosure was at least reckless.

■■ Standing alone, Stanert's substantial preliminary showing that the affidavit contained reckless or deliberate falsities and omissions is insufficient to warrant a *Franks* hearing. A defendant challenging an affidavit must also show that the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684. The effect of the misrepresentations and omissions on the existence of probable cause is considered cumulatively. *United States v. Esparza*, 546 F.2d 841, 844 (9th Cir.1976). We must determine, therefore, whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed.

■■ The confidential informant had identified Stanert as an individual allegedly manufacturing cocaine. As we have previously stated, this tip standing alone does not provide the basis for a magistrate's determination that there was probable cause to search Stanert's residence. The only additional material in the affidavit suggesting criminal activity at the residence was (1) the reports of two anonymous citizens that Stanert's residence was emitting ether fumes, (2) the corroboration of the odor by Hanlon and another agent, and (3) the statement by Hanlon that ether is a solvent used in the preparation of several illicit substances, including cocaine. Ether, however, is a noncontraband substance having a number of legitimate uses. *United States v. Tate*, 694 F.2d 1217, 1221 (9th Cir.1982), *vacated on other grounds*, — U.S. ——, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984). It is a very common solvent, and is also used to start engines. *Id.*

The confidential informant did state that Stanert was manufacturing cocaine; however, we have no indication of the basis for the informant's conclusion. The informant could very well have been reporting a casual rumor generated from the neighbors' olfactory perception that Stanert's residence was emitting a strong ether smell. In fact, one of the anonymous citizens speculated that Stanert was probably using the ether not to manufacture drugs but to free-base cocaine.

Although we are mindful that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause," *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), we also recognize that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* Upon reviewing the sufficiency of the modified affidavit, we conclude that it fails to provide a substantial basis for concluding that probable cause existed to search defendant's residence. Thus, Stanert has met the second prong of the *Franks* test and is entitled to an evidentiary hearing on his allegations.

## IV. *In Camera hearing*

■■ Stanert also contends that he is entitled to either an *in camera* or evidentiary hearing, or both, since he made a sufficient showing that the affidavit misrepresented or invented information supplied by a confidential informant. *See United States v. Kiser*, 716 F.2d 1268 (9th Cir.1983). Stanert's offer of proof, however, falls short of the substantial preliminary showing required by *Kiser*.

In *Kiser*, this court held that a defendant who claims a warrant affidavit misrepresents or invents information supplied by a confidential informant is, in some instances, entitled to a *Franks* hearing. *Id.* at 1271. We noted, however, that the public interest imposes unique procedural requirements and evidentiary burdens on a defendant who advances such a claim. *Id.*

In *Kiser*, the defendant's offer of proof consisted primarily of the affidavit of one Ericson who the defendant alleged was in fact the confidential informant. Ericson's

affidavit was factually similar to the warrant affidavit thus providing preliminary evidence that Ericson was indeed the affiant's informant. However, Ericson's affidavit also differed in significant respects with the warrant affidavit so as to cast doubt on the affiant's veracity. The court found that because defendant's offer of proof constituted a substantial preliminary showing that Ericson was the informant and that the warrant affidavit misstated important facts reported by Ericson, an *ex parte, in camera* hearing was called for to determine whether the defendant's suspicion was, in fact, correct. *Id.* at 1273. If during the hearing, the court concluded that Kiser had correctly identified the informant, the hearing would be extended for the purpose of determining if the defendant is entitled to a *Franks* hearing under the traditional test. 716 F.2d at 1273.

Here, Stanert has alleged that Louis Villar is the confidential informant. Unlike Kiser, however, Stanert does not offer any proof to support his claim. Furthermore, Stanert claims that the affiant must have misrepresented or invented the information from Villar because the substance synthetic cocaine does not exist and has never been manufactured. Even assuming that Stanert is correct about the nonexistence of synthetic cocaine, his assertion does not in any way constitute a showing that (1) the informant did not in fact tell the agents that Stanert was manufacturing such a substance, or (2) the affiant knowing this information to be an impossibility reported it to the judge in an effort to mislead him.

Stanert has not supplied any evidence that Louis Villar, the alleged informant, knew or believed that synthetic cocaine does not exist. Neither has he supplied any evidence that it is generally known or believed by the public that there is no such thing as synthetic cocaine. Furthermore, even if the informant knew that synthetic cocaine did not exist and made up the story to the police, this would not warrant suppression. "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

In addition, Stanert has not shown that the agents misled the judge by reporting information that they knew was false. As defense counsel admits in his affidavit, two of the five defense attorneys he contacted and who regularly handle cases involving controlled substances have heard of the term synthetic cocaine as it relates to theory. During the hearing before the district court, counsel for the Government stated that she has heard of cases involving synthetic cocaine and that it is something that exists. Thus, it is quite reasonable that the affiant in this case reported the informant's tip in good faith without any reckless disregard.

## V. *Conclusion*

We vacate Stanert's conviction and remand to the district court for a limited evidentiary hearing on the warrant affidavit. The district court should determine whether the affidavit was tainted with false or recklessly inaccurate information from the officer and, if so, whether the affidavit can be purged without destroying the foundation for the warrant.

AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.